IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


| | |
|---|---|
| Patrick Mark Ragan,<br><br>       Plaintiff,<br><br> vs.<br><br>Nancy A. Berryhill, Deputy Commissioner of<br>Social Security for Operations,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 3:18-cv-8226-HRH

O R D E R

   This is an action for judicial review of the denial of disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff Patrick Mark Ragan has timely filed his opening brief,[1] to which defendant, Nancy Berryhill, has timely responded.[2]  Oral argument was not requested and is not deemed necessary.

Procedural Background

   On February 3, 2014, plaintiff filed an application for disability benefits under Title II of the Social Security Act, alleging that he became disabled on January 22, 2014.  Plaintiff

---

[1]Docket No. 16.

[2]Docket No. 20.

alleged that he was disabled due to lower back surgeries and fusion, neck surgeries and fusion, aortic aneurism, trouble with lungs, underdeveloped bronchi tubes, and chronic obstructive pulmonary disease (COPD). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing. After the administrative hearing on March 24, 2017, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's unfavorable decision. On July 26, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's September 12, 2017 decision the final decision of the Commissioner. On September 19, 2018, plaintiff commenced this action in which he asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on January 18, 1954. He was 63 years old at the time of the administrative hearing. Plaintiff has a GED. Plaintiff's past relevant work was as a space scheduler for a city convention center.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2019."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

_____

[3]Admin. Rec. at 29.

[4]The five steps are as follows:

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since February 1, 2014, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: status post lumbar decompression of L1-L5 with fusion L1-L4, status post left hip replacement, status post fusion C2-T1, obesity and chronic obstructive pulmonary disease (COPD). . . ."[6]  The ALJ found plaintiff's aortic aneurysm and hypertension non-severe.[7]

---

[4](...continued)

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 29.

[6]Admin. Rec. at 29.

[7]Admin. Rec. at 30.

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[8]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." <u>Bray v. Comm'r of Social Security Admin.</u>, 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally lift or carry 10 pounds and frequently lift or carry less than ten pounds. He is capable of standing and walking two hours and sitting six hours out of an eight-hour day with normal breaks. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but never climb ladder[s], ropes, or scaffolds. He should also avoid concentrated exposure to pulmonary irritants and cannot perform outside (outdoor) work activity.[9]

The ALJ considered plaintiff's pain and symptom statements and found them not entirely consistent with the medical evidence and other evidence in the record. More specifically, the ALJ found that plaintiff's statements were inconsistent with his daily activities.[10] The ALJ also noted that plaintiff had continued to work for many years "despite [his] alleged continuing pain" related to his orthopedic problems and that he did not seek

---

[8]Admin. Rec. at 30.

[9]Admin. Rec. at 30-31.

[10]Admin. Rec. at 33.

pain management "after the alleged last unsuccessful surgeries."[11]  In addition, the ALJ noted that plaintiff had significant improvement after both his lumbar surgery and his hip replacement.[12]  The ALJ also noted that plaintiff had retired from his last job rather than quitting due to his medical condition.[13]  The ALJ also found some inconsistencies in plaintiff's hearing testimony regarding how often he had to lay down during the day.[14]  Finally, the ALJ observed that plaintiff "did not change position during the [administrative] hearing every five to ten minutes from sitting to standing, walking or some other position and walked more than 30 seconds into the hearing room from the reception area."[15]

The ALJ gave little weight to the opinions of Dr. Mirza.[16]  The ALJ considered Dr. Johnson's opinions but she did not expressly assign a specific weight to his opinions.[17]  The ALJ gave Dr. Kabins' opinion little weight because the question of whether plaintiff is disabled is reserved to the Commissioner.[18]

---

[11]Admin. Rec. at 33.

[12]Admin. Rec. at 33.

[13]Admin. Rec. at 33.

[14]Admin. Rec. at 33-34.

[15]Admin. Rec. at 34.

[16]Admin. Rec. at 35.  Dr. Mirza's opinions are discussed below in detail.

[17]Admin. Rec. at 35.  Dr. Johnson's opinions are discussed below in detail.

[18]Admin. Rec. at 36.  Dr. Kabins did plaintiff's 2014 lumbar surgery.  Admin. Rec. at 522.  On September 12, 2014, Dr. Kabins wrote that plaintiff "has been off work from
(continued...)

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a space scheduler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. . . ."[19]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from February 1, 2014, through the date of this decision. . . ."[20]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than

---

[18](...continued)
8/15/14 (1st day of my care) indefin[i]tely/permanently." Admin. Rec. at 486.

[19]Admin. Rec. at 36.

[20]Admin. Rec. at 36.

one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred as to Dr. Mirza's opinions. The ALJ considered three opinions from Dr. Mirza, a September 2014 opinion, a March 2015 opinion, and a June 2015 opinion.[21]

On September 8, 2014, Dr. Mirza opined that plaintiff's shortness of breath resulted in extreme limitations in terms of his ability to walk on level ground at the same pace as others his age, speak easily, carry out short, simple instructions, understand and remember detailed instructions, interact appropriately with the public, co-workers, or supervisors, and respond appropriately to work pressures in a usual work setting.[22] Dr. Mirza also opined that

---

[21]Arguably, there was a fourth opinion from Dr. Mirza. On May 5, 2015, Dr. Mirza noted that plaintiff "cannot work because of health reason[s] and should strongly be considered for disability." Admin. Rec. at 678. The ALJ did not expressly mention this note by Dr. Mirza but the ALJ did generally observe that such statements involve issues that are reserved to the Commissioner. Admin. Rec. at 35-36. This would be a legitimate reason for the ALJ to reject Dr. Mirza's May 5 statement and thus any error in connection with this "opinion" would have been harmless. See Garcia v. Comm'r of Social Sec., 768 F.3d 925, 932 (9th Cir. 2014) (citation omitted) ("harmless error . . . exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination").

[22]Admin. Rec. at 481.

plaintiff's shortness of breath would cause extreme interference with his work production.[23]

Dr. Mirza opined that plaintiff could sit for one hour, could stand/walk for less than one hour, and could occasionally lift/carry ten pounds.[24]  Dr. Mirza also opined that plaintiff could occasionally stoop; could never crawl, climb, or reach; could frequently do simple grasping; could occasionally push/pull controls; could never do fine manipulation, could not use his feet for repetitive motions, could not be around unprotected heights or moving machinery; could not do occupational driving; and could not be exposed to dust, fumes, gases, and marked changes in temperature or humidity.[25]  Finally, Dr. Mirza opined that plaintiff's fatigue would severely impact his ability to function at work.[26]

On January 21, 2015, Dr. Mirza opined that plaintiff was totally disabled and unable to work at both his regular occupation and any other occupation.[27]

On June 16, 2015, Dr. Mirza opined that plaintiff's shortness of breath caused moderate limitations as to his ability to walk on level ground at the same pace with others his age and understand and remember detailed instructions; and marked limitations as to his ability to speak easily, carry out short, simple instructions, interact appropriately with the

---

[23]Admin. Rec. at 481.

[24]Admin. Rec. at 482.

[25]Admin. Rec. at 484.

[26]Admin. Rec. at 485.

[27]Admin. Rec. at 636.  The ALJ mistakenly referred to this as a March 2015 opinion. Admin. Rec. at 34.

public, co-workers, or supervisors, respond appropriately to work pressures in a usual work setting, and with work production.[28] Dr. Mirza explained that plaintiff's nebulizer treatments would require that he be off task for two hours each work day.[29]  Dr. Mirza opined that plaintiff would miss thirty days of work per month due to his shortness of breath.[30]  He also opined that plaintiff could sit for two hours and stand/walk for two hours.[31] Dr. Mirza opined that plaintiff could rarely lift/carry five pounds; could rarely stoop, squat, crawl, climb, or reach; could frequently do simple grasping; could occasionally push/pull controls and do fine manipulation; could use his feet for repetitive movements; could never work around unprotected heights or moving machinery; and had mild restrictions as to occupational driving, exposure to dust, fumes, gases, and marked changes in temperature or humidity.[32]

Dr. Mirza was a treating physician.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Id.  (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may

[28]Admin. Rec. at 729.

[29]Admin. Rec. at 729.

[30]Admin. Rec. at 730.

[31]Admin. Rec. at 730.

[32]Admin. Rec. at 731-732.

not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ rejected Dr. Mirza's opinions because they "appear to be inconsistent with one another[,]" they were "inconsistent with the medical evidence[,]" they had been "rendered several years ago[,]" and they were not consistent with Dr. Mirza's treatment records.[33] Plaintiff argues that these were not legitimate reasons for rejecting Dr. Mirza's opinions.

As for the first reason, that the opinions were inconsistent, the ALJ pointed out that in 2014, Dr. Mirza opined that plaintiff's shortness of breath caused extreme limitations, but that in June 2015, he found that plaintiff's shortness of breath only caused moderate to marked limitations.[34] This was not a legitimate reason because the ALJ failed to explain how the improvement that Dr. Mirza found would invalidate his opinions. It is entirely possible that a claimant's limitations might improve as his impairments respond to treatment.

As for the second reason, that Dr. Mirza's opinions were "inconsistent with the medical evidence[,]" the ALJ explained that the record showed that plaintiff had "an excellent outcome following [his] lumbar reconstructive surgery. . . ."[35] But this has little to

---

[33]Admin. Rec. at 35.

[34]Admin. Rec. at 35.

[35]Admin. Rec. at 35.

do with many of the limitations assessed by Dr. Mirza, which primarily were limitations flowing from plaintiff's COPD.

In connection with the second reason, the ALJ also noted that Dr. Mirza was "treating the claimant for the aortic aneurysm and not the COPD."[36]  Plaintiff argues that the record reflects that Dr. Mirza was treating him for all his conditions, including COPD.  By way of example, plaintiff cites to a September 2014 treatment note, but this treatment note is not from Dr. Mirza, but rather from Dr. Newman.[37]

The ALJ may consider how much a source knows about a particular impairment when considering what weight to give a medical opinion.  See 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion").  Dr. Mirza opined that plaintiff had significant limitations related to his COPD, yet plaintiff had a pulmonologist who was treating his COPD.  Dr. Mirza was not plaintiff's primary treating source for his COPD.[38] The fact that Dr. Mirza was not the primary treating source for plaintiff's COPD was a legitimate reason for the ALJ to discount Dr. Mirza's opinions.

As for the third reason, that Dr. Mirza's opinions had been rendered several years earlier, the ALJ explained that made the opinions of "dubious relevance to [plaintiff's]

---

[36]Admin. Rec. at 35.

[37]Admin. Rec. at 512-514.

[38]Admin. Rec. at 678.

current functioning."[39]  Dr. Mirza's 2015 opinion was rendered approximately two years

prior to the ALJ's decision in 2017.  A two-year-old opinion is not necessarily stale.

Moreover, as will be discussed in more detail below, if the ALJ believed that she did not

have current medical opinions in the record,[40] she should have obtained a more up-to-date

opinion.  This was not a legitimate reason to reject Dr. Mirza's opinions.

As for the fourth reason, that Dr. Mirza's opinions were inconsistent with his

treatment notes, the ALJ explained that "[r]eview of Dr. Mirza's progress notes reveal[s]

little abnormalities reported" and that

> [t]here is no evidence in any of the progress notes from the
> claimant's medical providers that he experienced shortness of
> breath while sitting in the examination room, that he was unable
> to speak without becoming short of breath or that shortness of
> breath adversely affected his ability to understand, remember or
> concentrate or relate to others.[[41]]

Plaintiff, however, points out that Dr. Mirza and other providers noted that he had shortness

of breath or complained of shortness of breath.[42]  Plaintiff also argues that observations in

an examining room are not the same as an assessment of a claimant's capacity to work. Thus,

plaintiff argues that this was not a legitimate reason to reject Dr. Mirza's opinions.

---

[39]Admin. Rec. at 35.

[40]There are opinions in the record from 2016 and 2017 but these were added to the
record after the ALJ's decision.  The Appeals Council determined that "[t]his additional
evidence does not relate to the period at issue."  Admin. Rec. at 2.  Plaintiff does not
challenge this finding.

[41]Admin. Rec. at 35.

[42]Admin. Rec. at 409, 413, 492, 713, 718.

While, as defendant concedes,[43] there is evidence in the record that plaintiff complained of shortness of breath to Dr. Mirza and other providers, that does not mean that this was not a legitimate reason for the ALJ to reject Dr. Mirza's opinions. Dr. Mirza's opinions, which contained significant limitations, were inconsistent with his treatment notes, which were almost entirely devoid of any clinical findings.[44] This was a legitimate reason for the ALJ to reject Dr. Mirza's opinions.

The ALJ gave two legitimate reasons for rejecting Dr. Mirza's opinions. The ALJ did not err in rejecting Dr. Mirza's opinions.

Plaintiff next argues that the ALJ erred as to Dr. Johnson's opinions. The record contains two opinions from Dr. Johnson, one from January 9, 2015 and one from March 3, 2015. Plaintiff only challenges the ALJ's rejection of the March 3, 2015 opinion.

On March 3, 2015, Dr. Johnson opined that plaintiff could sit for two hours; could stand/walk for two hours; could occasionally lift up to five pounds; could never carry any weight; could rarely stoop, squat, crawl, climb, or reach; could rarely do simple grasping, pushing/pulling of controls, and fine manipulation; could use his feet for repetitive movements; could never be around unprotected heights or moving machinery; could have no exposure to dust, fumes, or gases; and was moderately restricted as to occupational driving

---

[43]Defendant's Brief at 5-6, Docket No. 20.

[44]Admin. Rec. at 464-465, 629, 657, 661-662, 679-680, 683-684, 687-688.

and exposure to marked changes in temperature or humidity.[45]

The ALJ rejected Dr. Johnson's March 2015 opinion because Dr. Johnson had no further contact with plaintiff after his hip replacement surgery except for routine follow up and because it appeared that Dr. Johnson "relied too heavily on the subjective report of symptoms and limitations provided by the claimant[.]"[46] As for the first reason, plaintiff argues that the ALJ is imposing a requirement that does not exist, namely that in order for a medical opinion to be valid, the treating doctor must have an ongoing treatment relationship. As for the second reason, that Dr. Johnson appeared to rely too heavily on plaintiff's subjective reports, plaintiff argues that this is speculation on the ALJ's part and there is no basis in the record for such speculation. As the Ninth Circuit has observed, an ALJ should "not assume that doctors routinely lie in order to help their patients collect disability benefits." Lester, 81 F.3d at 832 (citation omitted).

But even if the ALJ erred as to Dr. Johnson's March 2015 opinion, this error was harmless. Dr. Johnson stated that the limitations he assessed were temporary, not permanent.[47] Thus, even if the ALJ had given Dr. Johnson's March 2015 opinion great weight, it would not have changed the ALJ's nondisability determination.

---

[45]Admin. Rec. at 622-623.

[46]Admin. Rec. at 35.

[47]Admin. Rec. at 624.

Plaintiff next argues that the ALJ erred because her RFC was not based on any medical opinions. The ALJ rejected the opinions of Dr. Mirza, Dr. Johnson, and Dr. Kabins, and she did not mention the opinions from the two non-examining physicians.[48] This means that the ALJ's RFC was not supported by any medical opinions.

Defendant argues that does not mean, however, that the ALJ's RFC was not supported by substantial evidence. Defendant argues that the ALJ's RFC was supported by substantial evidence because she took into consideration all the medical evidence, the evidence that plaintiff continued to work even with his impairments, and the effects of his obesity. This is proper evidence on which to base an RFC. See SSR 96-8p (RFC may be based on evidence such as medical history; medical signs and laboratory findings; "[e]ffects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment"; and "[e]vidence from attempts to work").

But, the fact that the ALJ did not give any weight to any of the medical opinions in the record "suggests that the ALJ relied on her own view of the medical evidence. . . ."

---

[48]On August 11, 2014, Donald Robins, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 4 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs and stoop; could never climb ladders/ropes/scaffolds and crawl; could frequently balance, kneel, and crouch; and should avoid concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. Admin. Rec. at 111- 112. On April 13, 2015, Ronald Crow, D.O., opined that plaintiff could occasionally lift/carry 10 pounds; could frequently lift/carry less than 10 pounds; could stand/walk for 2 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and could never climb ladders/ropes/scaffolds. Admin. Rec. at 130.

Guerrero v. Berryhill, Case No. 2:17-cv-4258-HRH, 2018 WL 5276415, at *5 (D. Ariz. Oct. 24, 2018). "It is improper for the ALJ to 'substitute[] her judgment for' those of the medical providers[.]" Id. (quoting Trevizo v. Berryhill, 871 F.3d 664, 683 (9th Cir. 2017)). Yet, that is what the ALJ appeared to do here. One could perhaps argue that this error was harmless because the ALJ could have given great weight to Dr. Robins' and Dr. Crow's opinions and plaintiff would not have been disabled if the ALJ had relied on those opinions. But, if Dr. Mirza's 2014 and 2015 opinions did not adequately reflect plaintiff's functioning in 2017, then arguably the non-examining opinions, which were also from 2014 and 2015, did not reflect plaintiff's functioning in 2017. If the ALJ felt that the medical opinions from 2014 and 2015 did not reflect plaintiff's functioning in 2017, she should have obtained an updated medical opinion. When the "record is inadequate to allow for proper evaluation of the evidence[,]" the ALJ's duty to further develop the record is triggered. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) (citation omitted). Here, that duty was triggered because there were no medical opinions in the record that the ALJ believed adequately addressed plaintiff's current functioning. The ALJ had a duty to more fully develop the record in this regard, and her failure to do so was error.

Finally, plaintiff argues that the ALJ erred in her consideration of his pain and symptom statements. "An ALJ engages in a two-step analysis" in evaluating "a claimant's testimony regarding subjective pain or symptoms. . . ." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented

-16-

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

> Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. See SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id. at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects

of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. See id. at *6-7.

Cindy F. v. Berryhill, 367 F. Supp. 3d 1195, 2019 WL 591451, at *5 (D. Or. 2019).

The ALJ considered plaintiff's pain and symptom statements and found them not entirely consistent with the medical evidence and other evidence in the record. More specifically, the ALJ found that plaintiff's statements were inconsistent with his daily activities.[49] The ALJ also noted that plaintiff had continued to work for many years "despite [his] alleged continuing pain" related to his orthopedic problems and that he did not seek pain management "after the alleged last unsuccessful surgeries."[50] In addition, the ALJ noted that plaintiff had significant improvement after both his lumbar surgery and his hip

---

[49]Admin. Rec. at 33.

[50]Admin. Rec. at 33.

replacement.[51]   The ALJ also noted that plaintiff had retired from his last job rather than quitting due to his impairments.[52]   The ALJ also found some inconsistencies in plaintiff's hearing testimony regarding how often he had to lie down during the day.[53]   Finally, the ALJ observed that plaintiff "did not change position during the [administrative] hearing every five to ten minutes from sitting to standing, walking or some other position and walked more than 30 seconds into the hearing room from the reception area."[54]   Plaintiff argues that these were not clear and convincing reasons for the ALJ to discount his pain and symptom statements.

The ALJ first discounted plaintiff's pain and symptom statements based on his daily activities.   To "conclude that a claimant's daily activities warrant an adverse credibility determination," the ALJ must "make 'specific findings relating to [the daily] activities' and their transferability. . . ."   Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).   Here, the ALJ noted that plaintiff's "admitted activities of daily living include preparing meals twice a week, taking out the garbage, driving himself, shopping for groceries, managing his own finances, and spending time with others. . . ."[55]   The ALJ then "note[d] that some of the physical and mental abilities required to perform these activities are the same as those necessary for obtaining and

---

[51]Admin. Rec. at 33.

[52]Admin. Rec. at 33.

[53]Admin. Rec. at 33-34.

[54]Admin. Rec. at 34.

[55]Admin. Rec. at 33.

maintaining employment."[56]  Such generalized findings, however, are insufficient.  <u>Ghanim</u> <u>v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014).  The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  <u>Garrison</u>, 759 F.3d at 1016.  Here, the ALJ ignored much of what plaintiff said about his ability to do chores and engage in other daily activities.  For example, plaintiff reported that it took him 30 minutes to take out the garbage because he takes breaks while doing this chore.[57]  This type of daily activity does not suggest that plaintiff would be able to maintain full-time employment.  This was not a clear and convincing reason for the ALJ to discount plaintiff's pain and symptom statements.

The ALJ next discounted plaintiff's pain and symptom statements because he continued to work for many years despite his alleged pain.  This was not a clear and convincing reason.  While plaintiff did continue to work despite being in pain, he reported that "I struggled to continue in my job as best I could without anyone knowing about it until I could retire from the city at age 60 with my benefits[.]"[58]  In other words, plaintiff continued working so that he could receive medical benefits in retirement, not because he

---

[56]Admin. Rec. at 33.

[57]Admin. Rec. at 333.

[58]Admin. Rec. at 168.

-20-

was not in as much pain as he alleged.

The ALJ also discounted plaintiff's pain and symptom statements because plaintiff did not seek pain management after his 2014 and 2015 surgeries, surgeries which plaintiff characterized as not being entirely successful.[59] In evaluating a claimant's statements, an ALJ may consider an "unexplained or inadequately explained failure to seek treatment." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). But, this was not an unexplained or inadequately explained failure to seek treatment. In fact, the record shows that plaintiff began seeing a pain specialist in 2016.[60] Moreover, plaintiff explained that he did not return to orthopedic care after his surgeries because he did not want another surgery and that he was not aware of any other treatment that might be available.[61] This was not a clear and convincing reason for the ALJ to discount plaintiff's pain and symptom statements.

The ALJ next discounted plaintiff's pain and symptom statements because he had significant improvement after his left hip replacement in 2015 and his lumbar surgery in 2014. While there is evidence in the record that plaintiff had some improvement after each surgery, plaintiff continued to report pain and take pain medications after these surgeries.[62] This was not a clear and convincing reason for the ALJ to discount plaintiff's pain and symptom statements.

---

[59]Admin. Rec. at 78.

[60]Admin. Rec. at 734-748.

[61]Admin. Rec. at 87.

[62]Admin. Rec. at 737, 742, 747.

The ALJ also discounted plaintiff's statements because plaintiff retired from his last job rather than quitting due to his impairments. This was not a clear and convincing reason because, as discussed above, plaintiff continued working, despite his impairments, so that he would have medical benefits in retirement. This is not the type of conduct that should be held against him.

The ALJ also discounted plaintiff's pain and symptom statements because his COPD was "medically managed" and "should be amenable to proper control" with medication.[63] In support of this finding, the ALJ cited to 1) an October 14, 2013 treatment note from Dr. Morse that indicated that plaintiff was having "[l]ess wheezing[,] less shortness of breath[,] less cough[;]"[64] 2) a July 22, 2014 treatment note from Dr. Arshad that indicated that plaintiff's pulmonary function test "show[ed] moderate emphysema with FEV1 of 1.66 liters that is 55% of predicted[,]"[65] and 3) a December 12, 2014 treatment note from Dr. Kabins that indicated that plaintiff's COPD was "controlled by pulmonary service[.]"[66]

This evidence does not show that plaintiff's COPD was controlled to the point that it would not result in limitations, which seems to be what the ALJ was implying. This was not a clear and convincing reason for the ALJ to discount plaintiff's pain and symptom statements.

---

[63]Admin. Rec. at 32.

[64]Admin. Rec. at 413.

[65]Admin. Rec. at 469.

[66]Admin. Rec. at 587.

The ALJ next discounted plaintiff's pain and symptom statements because the ALJ thought that plaintiff's hearing testimony contained inconsistencies. The ALJ stated that plaintiff first testified that "he laid down 'once in while', then that he laid down 8 hours in an 8-hour period and finally, that he laid down 5 to 6 hours in an 8-hour period."[67] The ALJ went on to state that "[i]f the claimant laid down between 5 to 8 hours consistently, it is reasonable to expect he would exhibit loss of muscle tone and strength and weakness. The more recent records do not confirm such findings."[68]

An ALJ may rely on inconsistencies in discounting a claimant's pain and symptom statements. Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). But, plaintiff's hearing testimony was not inconsistent. Plaintiff made a distinction between laying down on his bed and using his recliner.[69] He testified that he only laid down on his bed once in awhile during the day and not for very long, but that in the course of an entire day, he laid down or used his recliner for 8 hours and that in an 8-hour work-day time period, he laid down or used his recliner for 5-6 hours.[70] This was not a clear and convincing reason to discount plaintiff's pain and symptom statements.

Finally, the ALJ discounted plaintiff's pain and symptom statements because plaintiff did not change positions during the hearing and was able to walk into the hearing room.

---

[67]Admin. Rec. at 33.

[68]Admin. Rec. at 34.

[69]Admin. Rec. at 84.

[70]Admin. Rec. at 84.

Plaintiff makes no argument on this reason, and as defendant points out, an ALJ's personal observations can be a factor that the ALJ considers when evaluating a claimant's subjective complaints. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). But even assuming that this was a clear and convincing reason, it would be the only one given by the ALJ, and by itself, it does not constitute substantial evidence supporting the ALJ's discounting of plaintiff's pain and symptoms statements. Thus, the ALJ erred in discounting plaintiff's pain and symptom statements.

Because the ALJ erred in discounting plaintiff's pain and symptom statements and failed to fully develop the record, the court must determine whether to remand this matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for

further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

If the ALJ had only failed to fully developing the record, then a remand for further proceedings would be appropriate. But the ALJ also erred in discounting plaintiff's pain and symptom statements. Further administrative proceedings on this issue are not necessary. Plaintiff testified that he had to either lay down or rest in his recliner for 5-6 hours in an 8-hour work-day period.[71] The vocational expert testified that there would be no work for such a person.[72] If plaintiff's testimony were credited as true, he would be disabled. Thus, a remand for an award of benefits is appropriate here.

Conclusion

The decision of the Commissioner is reversed, and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 16th day of May, 2019.

/s/ H. Russel Holland
United States District Judge

---

[71]Admin. Rec. at 84.

[72]Admin. Rec. at 95.